## MASON *v.* CLAPHAM.

PARTNERSHIP; DORMANT PARTNER; BROKERS.

1. A secret partner is liable, not because credit is supposed to have been given to the partnership by reason by his connection with it, but because he is one of the contracting parties and is benefited by the contract; and in order to charge him with the debts of the firm of which he is a dormant member, it is necessary to show that such debts were contracted in the name and business which was within the scope of the partnership, or that he had an interest in the transaction or the profits.

2. A dormant partner of a brokerage firm operating solely on a local exchange which deals only in outright purchases and sales for cash, is not liable to a third person who did not know of his connection with the firm, for the proceeds of a marginal transaction between the third person and the active partner, where the latter customarily carried on marginal transactions and dealt on another exchange, and the dormant partner received no profit from such transactions including the one in question. (Citing *Howell* v. *Commercial Nat. Bank,* 40 App. D. C. 370.)

No. 2660. Submitted October 12, 1914. Decided December 7, 1914.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action to recover the net proceeds of certain shares of stock alleged to have been converted by the defendants.

*Affirmed.*

The COURT in the opinion stated the facts as follows:

The appellant, Harry B. Mason, hereinafter styled plaintiff, filed his declaration against Ashton G. Clapham and Griffin Halstead, charging them as partners, to recover the sum of $1,257.25, the net proceeds of ten shares of American National Bank stock alleged to have been converted by them. Halstead made no answer, and Clapham filed a plea of nonassumpsit. The plaintiff offered a partnership agreement between Halstead and Clapham, executed the 1st day of April, 1906, whereby they undertook to enter into a partnership for the transaction of a general brokerage business upon the Washington Stock Exchange, which provided for the purchase of membership in the name of Halstead. That Halstead has become bankrupt. He testified that he called at the office of Halstead & Company in Washington, and saw Halstead, who advised him to buy American National Bank stock for a rise in price and dividends. As plaintiff had no cash, Halstead agreed that he would purchase the ten shares of American National Bank stock for the plaintiff at 185 if the plaintiff would turn over to him a certificate of twenty-five shares of Atlantic Building stock of the value of $1,250, then owned by plaintiff; that on the following day Halstead purchased ten shares of said stock for the plaintiff on the Washington Stock Exchange at 185, whereupon the plaintiff delivered to him the twenty-five shares of Atlantic Building stock, and Halstead thereafter retained both; Halstead gave him a statement of account which showed a balance of considerable indebtedness due by plaintiff; that on the 9th of December, 1909, the plaintiff called at the office of Halstead & Company and directed Halstead to sell the ten shares of bank stock at 190, and that the said Halstead, on or about said day, sold the same for the plaintiff at 190, the brokerage charge for purchase and sale being $5 each. Later Halstead furnished another statement showing the balance due by plaintiff to Halstead & Company, and reciting the stocks held on the account. Neither Clapham nor Halstead ever made any payment to

plaintiff on account of the bank-stock transaction, and plaintiff never received back the Atlantic Building stock. Plaintiff has been dealing with Griffin Halstead since about 1905 or 1906. Plaintiff's profit on the American National Bank stock was $50 less commission and other charges. The commission was $5 each time. Plaintiff was chargeable with interest at 5 per cent for the carrying of the bank stock, and entitled to credit for three dividends of $20 each for the time he owned it. That Atlantic Building stock was one sold about town, but not known to plaintiff to be listed or sold on the Washington Stock Exchange. The account was properly charged with the American National Bank stock. Plaintiff called Halstead's attention to the fact that he had not been given credit for the sale of the American National Bank stock, and asked him to credit the same on the account. Plaintiff had a general account with Halstead for all his transactions, and it was on that general account that he asked credit to be given. At the time the memorandum in evidence was furnished plaintiff, he called Halstead's attention to the fact that credit for the sale of the American National Bank stock had not been entered on the paper, and Halstead directed the bookkeeper to enter it thereon, which he did.

Besides this bank stock, plaintiff bought and traded in numerous other stocks on the Exchange through Halstead & Company; that he was accustomed to buy Reading and the other stocks mentioned in his statement of account; the account varied but he usually carried about 100 or 150 shares or less. Washington transactions and New York transactions were not separated on the account. That plaintiff's general running account with Halstead continued until the time of the latter's failure. This was plaintiff's only transaction in American National Bank stock. Plaintiff never knew or had any business dealings with Mr. Clapham, and cannot say positively that he ever saw him in Halstead's office. Plaintiff did not know Mr. Clapham in this transaction; at that time he did not know he was a partner of Halstead; that on January 15, 1911, Halstead suffered judgment by default in this cause for the amount of plaintiff's claim.

Clapham offered testimony tending to show that he, by his partnership agreement, received one half of the commission on purchase and one half of the commission on sale of stock on the Washington Stock Exchange only; that he did not receive any part of the profits derived by Halstead from interest charges on marginal transactions; that he was not interested in any way in the marginal transactions; that he was not interested in any way in Halstead's business other than in outright sales and purchases of stock on the Washington Stock Exchange, and only in the commission for the purchase and sale of such stock made for cash; that Halstead had New York connections and traded in stocks on the New York Stock Exchange; that Clapham was not interested in any way in those New York transactions by way of purchase or commission; had nothing whatever to do with the renting of Halstead's office, or the hire or discharge of his employees; that he was not charged with any expense in the conduct of Halstead's office, rent salaries, light and heat. Clapham did not receive anything from any other source of the business than from the commission on the purchase and outright sale of stock on the Washington Stock Exchange. That purchases and sales on the Washington Stock Exchange are for cash; that the Stock Exchange had nothing to do with the marginal transactions, as these are private arrangements between the broker and customer; that in the conduct of a brokerage business such as was carried on by Halstead, commissions are charged for the purchase of stock, and in addition to that, when a broker carries a transaction upon margin for a customer, an interest charge is made. Clapham did not receive any part of the interest charges that Halstead made; that Clapham had absolutely nothing to do with the management and conduct of Halstead's business; that Clapham had nothing to do with the marginal transactions of Halstead in any way as to profit or otherwise.

Upon the close of this testimony, the court directed a verdict in favor of Clapham, because the evidence of the plaintiff was insufficient to show a good cause of action.

*Mr. H. A. Heilmuller* and *Messrs. Archer & Smith,* for the appellant.

The sale of the ten shares of bank stock on the Washington Stock Exchange was a transaction fairly within the scope of the partnership agreement, and as an incident to the partnership relation, the moment the proceeds reached Halstead, Mr. Clapham became liable for their proper application, even though he was a dormant partner and the relation unknown to appellant. Lindley, Partn. 298; Parsons, Partn. 150; *Bane* v. *Detrick,* 52 Ill. 191; *Alexander* v. *State,* 56 Ga. 478; *Phillips* v. *Nash,* 47 Ga. 218; *Winship* v. *United States Bank,* 5 Pet. 529.

*Mr. Charles A. Douglas, Mr. Thomas Ruffin,* and *Mr. Hugh H. Obear,* for the appellee:

The relation between Clapham and Halstead was limited to purchases and sales upon the Washington Stock Exchange, and Clapham was not interested with Halstead in his brokerage business or the marginal transactions conducted by the latter. *Howell* v. *Commercial Nat. Bank,* 40 App. D. C. 370; *Wilson* v. *Edmunds,* 130 U. S. 472.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

There was no error in the direction of the verdict. Clapham was a dormant partner of Halstead, and as such, liable as other partners are for transactions within the scope of the partnership. The business of the partnership was confined to transactions on the Washington Stock Exchange in which the partnership had a certificate of membership held in the name of Halstead. All transactions on that exchange are in cash; all purchases and sales being out and out for cash.

In addition to this special business of the partnership, Halstead transacted other business as a broker on the New York

Exchange, carrying stock purchased for customers on margin. Plaintiff did not know of the connection of Clapham with Halstead and had no transactions with him. He purchased stock through Halstead by depositing a margin with the latter and paying him interest on advances. He had a general running account with Halstead, and at the time of the transaction in question was indebted to him. When the American National Bank stock had been sold as directed, Halstead, at plaintiff's direction, credited this account with the proceeds of the sale. Clapham shared only in the profits of the transactions on the Washington Exchange. He had no interest in the marginal transactions, and received no part of the commissions thereon, or of the interest charged customers for carrying stock.

A secret partner is liable, not because credit is supposed to have been given to the partnership by reason of his connection with it, but because he is one of the contracting parties and is benefited by the contract. In order to charge him with the debts of the firm of which he is a dormant member, it is necessary to show that such debts were contracted in the name and business which was within the scope of the partnership, or that he had an interest in the transaction or the profits. *Re Munn,* 3 Biss. 442, 446, Fed. Cas. No. 9,925; *Pitts* v. *Waugh,* 4 Mass. 424, 426; *Livingston* v. *Roosevelt,* 4 Johns. 251, 4 Am. Dec. 273.

It is clear that this transaction was not included in the partnership agreement, but was a separate transaction of Halstead, in which he alone was interested. Clapham received no part of the profits. See *Howell* v. *Commercial Nat. Bank,* 40 App. D. C. 370; *Wilson* v. *Edmonds,* 130 U. S. 472, 32 L. ed. 1025, 9 Sup. Ct. Rep. 563. There was no evidence to show that the proceeds of the sale of the stock were converted by Halstead.

Plaintiff had a running account with Halstead, to whom he was indebted, and by his direction the stock sale was credited to him on this account.

The judgment is affirmed, with costs.                *Affirmed.*